**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

NATHANIEL WILLIAMS, et al.,

    Plaintiffs,

v.                                                                                          Case No. 21-10749

CITY OF JACKSON, et al.,

    Defendants.

_____/

**OPINION AND ORDER OVERRULING PLAINTIFFS' OBJECTIONS, ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Nathaniel Williams is the sole member of several limited liability companies (collectively "Corporate Plaintiffs") through which he owns seven residential rental properties located in Jackson, Michigan. Plaintiffs bring this action challenging the constitutionality of Jackson's municipal ordinance requiring the registration of non-owner-occupied residential properties and subjecting them to periodic building inspections. Plaintiffs assert that Jackson's ordinance violates the Fourth, Fifth, and Fourteenth Amendments, and they seek nominal damage and injunctive relief preventing its enforcement. The court referred all pretrial matters in this action to Magistrate Judge Elizabeth Stafford. (ECF No. 6.) Plaintiffs subsequently filed a motion seeking a "Temporary Restraining Order and Preliminary Injunction," arguing that Plaintiffs "will suffer irreparable harm for which there is no adequate remedy at law, including but not limited to, criminal punishment solely as a result of refusing to consent

to an unlawful warrantless search." (ECF No. 22.) The Magistrate Judge recommended that this motion be denied. (ECF No. 32.)

Plaintiffs have filed three objections to the Report and Recommendation ("R&R"). (ECF No. 34.) Defendants have now fully responded to Plaintiffs' objections. (ECF No. 35.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the court will overrule Plaintiffs' objections and adopt the R&R.

## I. BACKGROUND

Plaintiffs' seven residential properties are regulated as "non-owner-occupied" residential properties by Defendant City of Jackson. (ECF No. 1, PageID.2-3.) Jackson is the primary Defendant in this 42 U.S.C. § 1983 action, but Plaintiffs have also named numerous City officials and employees in their official capacities as additional Defendants.[1]

In 2012, Jackson first adopted a Non-Owner-Occupied Residential Property Registration ("NOORPR") Ordinance. The Ordinance requires that landlords register their properties with the City by completing a form, paying a renewal fee every two years, and complying with habitability standards. *See* City of Jackson Code of Ordinances ch 14, § 14-4 (2020).[2]  (*See* ECF No. 1-2.) The definition of rental property includes "(1) A traditional lease with a written lease contract; (2) A lease or rental

---

[1]     Plaintiffs sue the following Defendants in their official capacities: Derek Dobies, a City Council member and the Mayor of Jackson; city attorneys Mathew Hagerty, Mark M. Porterfield, Gilbert W. Carlson, and Bethany M. Smith; Chief Building Inspector Brian Taylor; city inspectors Williams Mills, Tim J. Pickett, Jr., and John O'Connor; Director of Neighborhood and Economic Operations Shane Laporte (*See* ECF No. 10.)
[2]     Available at https://library.municode.com/mi/jackson/codes/code_of_ordinances/ 370691 (last visited Sept. 16, 2022).

arrangement with no written contract; (3) A unit in which a non-owner is allowed to reside in exchange for providing services to the owner, whether the owner resides in the unit or resides elsewhere. . . ." *Id.* § 14-3.

The Ordinance provides that registered rental properties are subject to inspections "as are necessary to enforce the provisions of this article" and "to safeguard the health, safety and welfare of the occupants of dwellings and of the general public." *Id.* §14-42. Specifically, the Ordinance provides that:

> (4) In an emergency situation, the chief building official, chief of police and fire official have the right to enter at any time. for purposes of this article, an emergency shall exist when the chief building official, chief of police or fire official has reasonable grounds to believe that a condition hazardous to health or safety exists on the premises and requires immediate attention.
>
> (5) In a nonemergency situation or where the owner or occupant of any dwelling demands a warrant for inspection of the premises, the chief building official, chief of police or fire official *shall obtain a warrant from a court of competent jurisdiction*.

*Id.* §14-42 (emphasis added). The owner is responsible for inspection fees. If the inspector finds no "existing condition [that] constitutes a violation of this article[,]" then the building department "shall" issue "a certificate of compliance." *Id.* § 14-42.1. However, when an inspection uncovers "a condition that would constitute a violation of this article . . . an order to comply with this article shall be issued immediately and served upon the owner in accordance with section 14-45. Upon reinspection and proof of compliance, the order shall be rescinded and a certificate of compliance shall be issued." *Id.*

Violations of the NOORPR Ordinance constitute "a blight violation subject to the penalties provided in chapter 2.5 of this Code. Each day that a [violation] continues to

3

exist is a separate offense." *Id.* § 14-17. Additionally, the version of the Ordinance effective in 2021 stated that:

> [I]f a summary proceeding action is pending for a non-owner occupied residential dwelling or unit, and when there is no current, valid registration for a non-owner occupied residential dwelling or unit, no rent payments shall be accepted, retained, or recoverable by the owner or lessor of the non-owner occupied residential dwelling or unit for the period of time in which the non-owner occupied residential dwelling or unit was not registered under this article.

*Id.*

Under the NOORPR Ordinance an owner has the right to a citation "to the building code board of examiners and appeals for a hearing." *Id.* §§ 14-51, 14-52. If an owner loses his appeal or does not contest the citation, Jackson's Ordinance provides that "[a]ny authorized department or agency of the city may institute an administrative adjudication proceeding" before the City's Administrative Hearings Bureau to correct the violation and bring the building into compliance. *See* City of Jackson Code of Ordinances ch 2.5, § Sec. 2.5-13 (2020). After holding a hearing, the Bureau has the authority to order an owner's compliance "with applicable provisions of [Jackson's] Code." *Id.* § 2.5-19.[3] In turn, if the violation continues, the Bureau has the authority to "pursue other collection efforts such as contempt, [in Jackson County Court] which could result in up to 90 days of jail time" if the owner still has not corrected the issue.

---

[3] This court previously provided an overview how the City of Jackson's Administrative Appeals Bureau functions. *See Klein v. City of Jackson,* 735 F. Supp. 2d 732, 734 (E.D. Mich. 2010) (citing Mich. Comp. Laws § 117.4q, § 117.4l, §117.4r) (quotation omitted) (Duggan, J.) ("Michigan law permits cities meeting certain specifications to establish an administrative hearings bureau to adjudicate and impose sanctions for violations of the [city's] charter or ordinances designated in the charter or ordinance as a blight violation. . . Pursuant to this law, [Jackson] adopted an ordinance effective January 1, 2005, establishing an Administrative Hearings Bureau ('AHB') for the enforcement of various ordinances therein designated as blight violations.").

4

*See Klein v. City of Jackson*, 735 F. Supp. 2d 732, 734 (E.D. Mich. 2010) (citing *Id.* § 2.5-23).

Plaintiffs commenced the present action in April 2021. (*See* ECF No. 1.) Plaintiffs' complaint contains five counts. (*See* ECF No. 10.)

- *Count I* alleges that NOORPR Ordinance imposes "Unconstitutional Conditions" under the Fifth and Fourteenth Amendments
- *Count II* alleges that NOORPR Ordinance violates the Fourth Amendment's Search and Seizure Clause.
- *Count III* alleges that NOORPR Ordinance violates the Fourth Amendment's Search and Seizure Clause.
- *Count IV* alleges that NOORPR Ordinance violates Section One Fourteenth Amendment.
- *Count V* brings a claim of unjust enrichment against the City of Jackson, alleging that "through its inspection and permitting fee assessments, defendant City of Jackson has acquired funds rightfully belonging to plaintiffs."

(*Id.*)

The crux of Plaintiffs' complaint appears to be their contention that the NOORPR Ordinance is "invalid" because it "lacks any provision or safeguard of pre-compliance review; it allows absolutely no right of pre-compliance review or bi-parte challenge before the search occurs." (ECF No. 1, PageID.12–13.) The complaint also alleges that the inspection fees, allowed under "[Mich. Comp. Laws §] 125.526(16)" constitute "an unlawful and unreasonable imposition of a local tax against owners of non-owner-occupied residential properties in Jackson." (ECF No. 1, PageID.22.)

The complaint also makes only a passing reference, in its request for injunctive relief, to the claim that Plaintiff Williams faces "irreparable harm" because he "continues to be subject to. . . criminal prosecution in the matter styled *People of Jackson County v Nathaniel Williams*, [in Michigan] 12th District Court File No. 21-0038- JP" for violating

5

an order of the City of Jackson's Administrative Hearing Bureau. (*Id,* PageID.25; ECF No. 1-1, PageID.31.) Plaintiffs elaborated, somewhat, in their motion for preliminary injunction that Williams allegedly faces "criminal punishment solely as a result of refusing to consent to an unlawful warrantless search." (ECF No. 22, PageID.226, 231.) And it is not until Plaintiffs' reply brief, supporting their motion for preliminary injunction, that Plaintiffs fully explain that "[p]rior to filing of the complaint, [D]efendants on 10/24/2017 conducted an administrative warrant search of Mr. Williams' private property, charged plaintiff Williams numerous assessments for conducting the search ($835.52), and have instituted a criminal proceeding against plaintiff Williams for, inter alia, failing to pay the warrant fees."[4] (ECF No. 30, PageID.401.) Plaintiffs' reply brief also includes an affidavit laying out that Defendants also obtained administrative warrants in 2021 to conduct additional inspections of Plaintiffs' residential properties. (*See* ECF No. 30-2, PageID.409.)

On January 4, 2022, after holding a hearing on the motion, Magistrate Judge Stafford issued a Report & Recommendation ("R&R") that would deny Plaintiffs' request for a preliminary injunction.[5] (ECF No. 32). Judge Stafford concluded that Plaintiffs had failed to meet "the burden heavy burden" required for the issuance of a preliminary injunction mainly because they had failed to show a "strong likelihood of success on the

---

[4] While not directly relevant to the objections currently being pursued by Plaintiffs, the court also notes that, subsequent to the initial filing of Plaintiffs' request for preliminary injunction, the misdemeanor contempt charge brought against Plaintiff Williams in Jackson County District Court was dismissed in April 2022 *nolle prosequi*. *See City of Jackson v. Williams*, No. 210038JP-OM (Mich. Dist. Ct. April 4, 2022).

[5] The Magistrate Judge also concluded, correctly, that the part of the motion requesting a Temporary Restraining Order was moot because Defendants had appeared and filed a response to the motion. (*See* ECF No. 32, PageID.467.)

merits." (*Id.*, PageID.468–69.) She concluded that the City's ordinance complies with the Fourth Amendment because it generally requires that inspectors obtain a warrant from "a court of competent jurisdiction" and that the ordinance affords sufficient due process by providing an opportunity for post-enforcement review. (*Id.*, PageID.471–72.) Magistrate Judge Stafford also concluded that Plaintiffs "cannot show that they would suffer irrepealable harm that is recognized by the Constitution if their motion is denied." (*Id.*, PageID.474.) And, citing the results of a recent inspection report attached to Plaintiffs' reply brief, she concluded that the public interest would not be served by allowing Plaintiffs to continue rent to rent their properties due to "inspectors finding 88 violations, including the lack of water service" during one inspection. (*Id.*, PageID.745 (citing ECF No. 30-2, PageID.421–23).) Plaintiffs have now filed three objections to the Report and Recommendation. (*See* ECF No. 34.)

## II. STANDARD

### A.     Objections to a Report and Recommendation

When a party files timely objections to a Magistrate Judge's report and recommendation on a dispositive motion, the court "make[s] a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–74 (1980). This process provides the court "the opportunity to consider the specific contentions of the parties," *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981), and "enables the district judge to focus attention on those issues—factual and legal— that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "The parties have the duty to pinpoint those portions of the magistrate's report that the

7

district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation marks and citation omitted). After re-examining the evidence relevant to these objections, the court determines whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

### B.  Motion for Preliminary Injunction

The court considers four factors when deciding whether to grant a preliminary injunction. First, the court must determine "whether the plaintiff has established a substantial likelihood or probability of success on the merits of his claim." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689–90 (6th Cir. 2014). Next, the court must consider "whether the plaintiff would suffer irreparable injury if a preliminary injunction did not issue." *Id.* Finally, the court must analyze "whether the injunction would cause substantial harm to others" and "whether the public interest would be served if the court were to grant the requested injunction." *Id.* The Court will make specific findings concerning each factor, "unless fewer are dispositive of the issue." *In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985) (citing *United States v. Sch. Dist. of Ferndale,* 577 F.2d 1339, 1352 (6th Cir.1978)).

The four factors "are to be balanced against each other. A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

### III. DISCUSSION

### A.  First Objection

Plaintiffs first object that the Magistrate Judge made "a clearly erroneous finding that [] they attempted to 'add an as-applied challenge' as a new issue for the first time in their reply brief." (ECF No. 34, PageID.513 (quoting ECF No. 32, PageID.469).) Plaintiffs point out correctly that their initial complaint "state[d] plainly" that their constitutional challenge was both "facial and as-applied." (*Id.*)

But the court fails to see how this objection is material. After all, the Magistrate Judge expressly concluded that "[b]oth the as-applied and facial attacks lack merit" for the same underlying reasons. (ECF No. 32, PageID.470.) As explained more thoroughly below, the court agrees with the Magistrate Judge's constitutional analysis denying the motion for preliminary injunction as a whole. Consequently, while dicta in the Report and Recommendation may have revealed the Magistrate Judge's initial inclination as to the viability of a separate as-applied challenge, the court does not view her statement to be a final adjudication on the question of whether Plaintiffs' pled an as-applied challenge. Going forward, Plaintiffs may either file a motion seeking to amend their complaint to more plausibly support an as-applied challenge, or when Defendants inevitably file a dispositive motion, they can alternatively provide more thorough briefing on the issue.

Because Plaintiffs' first objection is not based on a finding material to the Magistrate Judge's adjudication of the motion for preliminary injunction, the court will overrule the objection.

### B. Second Objection

Plaintiffs next object that the Magistrate Judge misunderstood the nature of their constitutional challenge. (ECF No. 32, PageID.469.) Specifically, Plaintiffs state that they are challenging the fact that the NOORPR Ordinance "on its face, fails to provide. . . a chance for a property owner her/himself to challenge the search request before being sanctioned for refusing entry." (ECF No. 34, PageID.515.) And they point out that "in the event a property owner maintains her/his refusal to consent to search, the Ordinance . . . authorizes the City's *ex-parte* application for a non-emergency administrative search warrant to conduct the search." (*Id.*, PageID.516.)

The court does not quarrel with Plaintiffs' reading of Jackson's NOORPR Ordinance. The Ordinance indeed provides no opportunity for an owner to contest an administrative search warrant duly authorized by a court before its execution. But the court finds that Magistrate Judge Stafford expressly considered this fact and correctly concluded that, as a matter of law, "the Fourth Amendment permits officers to conduct inspections, even surprise ones, when they are armed with an *ex-parte* warrant." (ECF No. 32, PageID.471.)

Again, it is undisputed that Jackson's NOORPR Ordinance requires that City officials seek a warrant before conducting an inspection of a residential property, absent an emergency situation. *See* City of Jackson Code of Ordinances ch 14, § 14.42 ("In a nonemergency situation [the] official shall obtain a warrant from a court of competent jurisdiction."). Such a practice is consistent with the well-established strictures of the Fourth Amendment. In *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523 (1967), and *See v. City of Seattle*, 387 U.S. 541 (1967), the Supreme

Court held that the Fourth Amendment applies to administrative inspections of private premises, including both dwellings and commercial premises. In these rulings, the Court established that such inspections must be carried out pursuant to a warrant issued under standards appropriate to the administrative conduct involved.

However, the *Camara* Court also indicated that a lower probable standard tailored specifically to the administrative setting should be used. 387 U.S. at 538–39 (finding that a municipality must have a "warrant procedure [that] is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest"). Ultimately, based on the balance of interests, the Court concluded that administrative warrants to inspect a property did not require individualized suspicion. *Id.* at 537–38 ("Where considerations of health and safety are involved, the facts that would justify an inference of 'probable cause' to make an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken") (citation and quotation omitted).

Plaintiffs' core argument—that property owners are constitutionally entitled to pre-compliance review before their property can be searched—seems to be predicated on a misreading of the Supreme Court's more recent decision in *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 412 (2015). In *Patel,* the Court held that a city ordinance requiring that all Los Angeles hotels keep a guestlist available for physical inspection by police "on demand" *without* a warrant was unconstitutional. 576 *Id.* at 412. In *Patel*, the Court recognized that there are circumstances under which applying for a warrant is impracticable, but even then, "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be

11

afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.* at 420. Without such precompliance review, an intolerable risk exists that searches will exceed statutory limits or be used to create a pretext for harassment. *Id.* at 2452-53.

Plaintiffs reason that Jackson's Ordinance is unconstitutional because, although it requires that an administrative warrant be issued, it allows such warrants to be issued *ex-parte*, thereby depriving Plaintiffs of "pre-compliance review for either routine search requests or non-emergency administrative warrant requests." (*See* ECF No. 34, PageID.516.) And they cite *Benjamin v. Stemple*, a Sixth Circuit opinion that applied *Patel*'s holding to *warrantless* inspections under the City of Saginaw's Dangerous Building Ordinance. *See* 915 F.3d 1066, 1069 (6th Cir. 2019).

As Magistrate Judge Stafford observed, however, the Supreme Court in *Patel* expressly states that it does not create a bi-parte hearing requirement for searches predicated on a duly authorized *warrant*. *See Patel*, 576 U.S. at 427 ("[N]othing in our decision today precludes an officer from conducting a surprise inspection by obtaining an ex parte warrant."). Rather, *Patel* merely stands for the proposition that if a government agency *forgoes* formally seeking a warrant before conducting an administrative search, it must afford the interested party "an opportunity to have a neutral decisionmaker review an officer's demand to search . . . before he or she faces penalties for failing to comply." *Patel*, 576 U.S. at 421, 423 ("But whatever the precise form, the availability of precompliance review alters the dynamic between the officer and

the hotel to be searched, and reduces the risk that officers will use these administrative searches as a pretext to harass business owners.").

Again, the NOORPR Ordinance at issue here expressly provides that when a property owner does not voluntarily consent to a property inspection, the City official *must* then obtain a warrant before conducting a routine search. *See* City of Jackson Code of Ordinances ch 14, § 14-42 (2020). Because no property can be inspected, absent an emergency, without either the owner's consent or the issuance of an administrative *warrant*, there is no need for the type of pre-compliance review described in *Patel*. *See Vonderhaar v. Vill. of Evendale, Ohio*, 906 F.3d 397, 401 (6th Cir. 2018) (holding that a plaintiff lacked standing to challenge a municipality's property maintenance code because "[a]ll of the evidence shows that the Village will get a warrant if it wishes to inspect a home"); *Trinity Marine Prod., Inc. v. Chao*, 512 F.3d 198, 202 (5th Cir. 2007) ("The heart of [the plaintiff's] case is its claim that there is a constitutional right—an amalgam of the Fourth and Fifth Amendments—to contest an administrative warrant's validity in federal court before its execution. . . [but] there is no constitutional right to a pre-execution [] hearing and [] administrative warrants, like criminal warrants, can be executed by means of reasonable force."). In sum, the court finds that the Magistrate Judge correctly concluded that Plaintiffs' likelihood of success on the merits of their constitutional claims is low. Therefore, Plaintiffs' second objection is overruled.

### C. Third Objection

Finally, Plaintiffs' object that the Magistrate Judge "erroneously concluded" that "the Ordinance (on its face) provides property owners with a chance to challenge a

13

warrantless search request before being sanctioned for refusing entry, which it does not." (ECF No. 34, PageID.521.) Plaintiffs acknowledge the NOORPR Ordinance creates an opportunity to appeal a citation for "review of building code violation determinations and the grant of any variance to the Code," but they argue such review is insufficient and "facially" unconstitutional, as it does not provide "review of the propriety, necessity, and/or scope of any search." (*Id.*) The court finds this distinction lacks merit.

Courts have consistently upheld municipalities' authority to implement mandatory property inspections provided that "the ordinances required the government to obtain a warrant if the owner refused consent." *See Crook v. City of Madison,* 168 So. 3d 930, 937 (Miss. 2015) (collecting cases). So, to the extent Plaintiffs argue that NOORPR Ordinance is constitutionally deficient because it does not provide a process to challenge the warrant's issuance, as opposed to violations uncovered during the inspection, the court concludes that Plaintiffs lack standing even to assert such a claim. Such an alleged deficiency is based on "[s]peculation about the possibility of future unconstitutional acts of officials" during the issuance of the warrant, and Plaintiffs' complaint does not contain a claim directly alleging that Defendants lacked probable cause under the relaxed, non-individualized standard articulated in *Camara* to inspect Williams' properties. *Hometown Co-op. Apartments v. City of Hometown*, 515 F. Supp. 502, 505 (N.D. Ill. 1981) (citing *Boyle v. Landry*, 401 U.S. 77, 91 (1971)) ("[T]he possibility that circumstances will arise in the future, . . . because the city. . . is unable to procure [a warrant] under the relatively liberal standards set down in the ordinance

14

consistent with *Camara,* does not state a case or controversy ripe for judicial determination."); *see also Vonderhaar,* 906 F.3d at 401.

But even if Plaintiffs had hypothetically asserted a plausible allegation that City officials had engaged in malfeasance when applying for an administrative search warrant, the court sees no indication in the Constitution's text that the City of Jackson would be required to provide a forum to vindicate such a claim. After all, if Plaintiffs are "a victim of an unconstitutional administrative search [they] can affirmatively bring the grievance before a federal tribunal by means of a *Bivens* suit [or a § 1983 claim]," so "[t]here is no danger of an unremedied constitutional wrong." *Trinity Marine Prod.*, 512 F.3d at 202. Consequently, Plaintiffs' third objection is immaterial to the Magistrate Judge's conclusion, so the court will also overrule the objection.

## IV. CONCLUSION

For the reasons stated above, the court will overrule Plaintiffs' objections and adopt the Magistrate Judge's well-reasoned R&R in full and without amendment. Accordingly,

IT IS ORDERED that Plaintiffs' objections (ECF No. 34) are OVERRULED, and the Magistrate Judge's January 4, 2022 Report and Recommendation (ECF No. 32) is ADOPTED IN FULL AND INCORPORATED BY REFERENCE.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Preliminary Injunction (ECF No. 22) is DENIED.

                                                            s/Robert H. Cleland
                                                            ROBERT H. CLELAND
                                                            UNITED STATES DISTRICT JUDGE

Dated:  September 22, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 22, 2022, by electronic and/or ordinary mail.

s/Lisa G. Wagner  
Case Manager and Deputy Clerk  
(810)292-6522

S:\Cleland\Cleland\EKL\Opinions & Orders\Civil\21-10749.WILLIAMS.ObjectionstoRR.AAB.EKL.docx