UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL WILLIAMS et al.,

      Plaintiffs,

v.

CITY OF JACKSON et al.,

      Defendants.

_____/

Case No. 21-cv-10749

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON DAMAGES (Dkt. 85) AND (2) AWARDING SUMMARY JUDGMENT TO PLAINTIFFS IN PART**

Plaintiffs Nathaniel Williams and his limited liability companies brought this lawsuit against Defendants City of Jackson and individual City officials to challenge the City's Non-Owner-Occupied Residential Property Registration (NOORPR) ordinance and the way the ordinance is applied. Plaintiffs allege Fourth, Fifth, and Fourteenth Amendment violations; a violation of Michigan's Headlee Amendment; a claim for unconstitutional conditions; and a claim for unjust enrichment. See Compl. (Dkt. 1).

Defendants moved for summary judgment as to all claims (Dkt. 64). The Court granted the motion as to all claims except Plaintiffs' claim for unconstitutional conditions against the City. See 1/19/24 Op. & Order (Dkt. 73). After a status conference held on April 18, 2024, the Court ordered briefing on the issue of damages only. 4/22/24 Order (Dkt. 84). Defendants then filed their motion for summary judgment regarding damages (Dkt. 85).[1] For the below reasons, the

---

[1] In addition to the motion, the briefing includes Plaintiffs' response (Dkt. 86) and Defendants' reply (Dkt. 90). Plaintiffs filed an identical, duplicate response as Dkt. 87—the Court will refer to

Court grants the motion in part and also awards summary judgment to Plaintiffs on their claim for unconstitutional conditions.

## I. BACKGROUND

All that remains in this lawsuit is Plaintiffs' claim that the NOORPR ordinance imposes "unconstitutional conditions" under the Fifth and Fourteenth Amendments in connection with the City's inspection of rental properties under the ordinance. See 1/19/24 Op. & Order at 9–11. The Court denied summary judgment to Defendants as to this claim, stating that there was a question of fact regarding whether the City charges fees to property owners who require the City to get a warrant prior to searching their property. Id. However, as the Court and parties prepared for trial on this claim, it became apparent to the Court that Plaintiffs were entitled to summary judgment with respect to this claim, along with injunctive and declaratory relief. What remained to be determined was whether Plaintiffs were entitled to any possible monetary relief. To that end, Defendants filed a summary judgment motion on damages (Dkt. 85). As explained below, Defendants are correct that the scope of potential monetary relief is far narrower than Plaintiffs assert. But determining the exact amount of monetary relief, if any, will require further adjudication.

---

Dkt. 86 when discussing and citing the response. The Court held a hearing on the motion on June 6, 2024.

## II. ANALYSIS[2]

In its prior summary judgment ruling, the Court pointed to the testimony of Shane LaPorte, the City's director of neighborhood and economic operations, acknowledging that fees were charged when a property owner insisted that the City obtain a warrant for an inspection:

> [W]hen asked the question: "As of 2022, are [property owners] still charged the administrative fees for getting an administrative search warrant?," LaPorte answered: "Yes." [LaPorte Dep. Tr.] at 19. He also answered "yes" when asked whether the City "make[s] it known to property owners or tenants that . . . this refusal of entry will . . . cause them to get these lockout charges and these administrative warrant changes [sic] [.]" Id. at 20.

1/19/24 Op. & Order at 10.

The City has not disputed the admissions of its official that fees were charged "for getting an administrative search warrant." In connection with their current motion on damages, Defendants contend that the administrative fees were never paid and were waived. See, e.g., Br. Supp. Mot. at 4. This argument is premised on Defendants' assertion that the only fees implicated by Plaintiffs' unconstitutional conditions claim are the so-called "administrative fees" related to search warrants. See id. at 9–12. Defendants state that, "to the extent administrative fees related to obtaining search warrants were assessed against Plaintiffs' properties, the administrative fees, including late fees, totaled only $1,257.31, and were never paid by [Plaintiffs]." Id. at 10; Taylor Aff. ¶¶ 5–6 (Dkt. 85-3). Defendants further state that they have waived those fees and that the City Council has approved an amendment to the NOORPR ordinance which prohibits the imposition of administrative fees relating to search warrants. SOMF ¶ 12; Taylor Aff. ¶ 7–8; Letter re Waiving Admin. Fees at PageID.1500 (Dkt. 85-4).

But an unconstitutional conditions claim may be made out based on threatened action.

---

[2] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). A court

Black v. Vill. of Park Forest, 20 F. Supp. 2d 1218, 1230 (N.D. Ill. 1998) (finding that "the mere threat that the fee may deter the exercise of Fourth Amendment rights" is sufficient to establish a claim for unconstitutional conditions). The assessment of the fee, not its payment, is what is critical. See id. The non-payment of these fees by Plaintiffs or the waiver of the fees by the City does not mean that an unconstitutional condition was not imposed. While non-payment or waiver may impact the amount of monetary relief Plaintiffs are entitled to be awarded, there is no genuine issue of fact that they are entitled to summary judgment on their claim and injunctive and declaratory relief.[3]

Turning to damages, Plaintiffs do not dispute that they did not pay the "administrative fees" related to requesting a search warrant or that those fees have now been waived. What they dispute is that the administrative fees associated with search warrants are the only fees implicated by their unconstitutional conditions claim. They argue that "the administrative fees are only a small part of the actual costs and fees imposed on property owners who require the City to obtain a warrant prior to searching the property." Resp. at 12.

More specifically, Plaintiffs submit that fees labeled in Defendants' documents as "lock out fees" and "reinspection fees" are also assessed when search warrants are requested and should

---

will grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1985).

[3] Rule 56(f)(1) allows a court to award summary judgment to the non-moving party sua sponte, "so long as the losing party was on notice that she had to come forward with all her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Because Defendants filed the initial motion for summary judgment, they were "on notice" that they had to come forward with all their evidence regarding fees. And Defendants certainly were on notice in connection with their current motion to come forward with all such evidence.

be considered impermissible under their unconstitutional conditions claim. Id. at 14–15. When an inspector shows up and a property owner demands a warrant, Plaintiffs explain, the property owner is charged a lock out fee. Id. at 14. When the inspector returns with a warrant, the property owner is charged a reinspection fee. Id. Plaintiffs state that damages arising from payment of those fees "are clear and are not fees that have been waived." Id. Plaintiffs cite to a summary chart of invoices for their properties that Defendants submitted with their initial motion for summary judgment as illustrating situations in which Plaintiffs have demanded warrants and then been charged lockout and reinspection fees when Defendants had to leave and return with a warrant. Id. (citing Summary of Invoices (Dkt. 86-2)).

Plaintiffs also argue that, when they refused to pay these fees, Williams was "forced to go before the Administrative Hearings Bureau to answer as to why he did not pay his fees," which in turn led to more fees and fines. Resp. at 3, 14 (citing Summary of Invoices). Plaintiffs go so far as to state that, except for the fees related to "refuse, furnace, structures, initial inspection, NOOPR [sic] Units, dismantled/inop vehicles, and grass/weeds," every charge on the invoice summary chart can be traced back to asserting their right to a warrant. Resp. at 15.

Plaintiffs' assertion of damages is without merit, with one small exception. The complaint does not seek "damages" for the unconstitutional conditions claim, except for a request for "nominal damages." Compl. at 28. The Court can award one dollar for nominal damages, without the need to convene a jury trial, as Defendants do not contest that amount.

Even if Plaintiffs had sought "damages" for the unconstitutional conditions claim, they should have presented evidence in opposition to Defendants' summary judgment motion, which asserted that Plaintiffs suffered no damages. See Br. in Supp. Mot. at 7–13. A party against whom a summary judgment motion has been filed is required to come forward with admissible evidence

5

demonstrating a genuinely disputed issue of fact. See March v. Levine, 249 F.3d 462, 471 (6th Cir. 2001) (holding that the non-moving party in a motion for summary judgment "may not rest on his pleadings, but must come forward with affidavits or other admissible evidence setting forth specific facts showing there is a genuine issue for trial") (punctuation modified). Plaintiffs did not produce any admissible evidence showing that, because of their demand that Defendants obtain a search warrant, they paid fees in excess of what would have been charged had they not made such a demand.

Plaintiffs did point to a chart setting forth various fees charged and the amounts "tendered" for some of those fees. But Plaintiffs did not assert—much less establish—an evidentiary basis upon which the chart would be admissible. There is no affidavit or other testimony showing that any of the entries are authentic and based on personal knowledge. Without such authentication, a chart is simply unauthenticated hearsay. See United States v. Harris, 200 F. App'x 472, 518 (6th Cir. 2006) (holding a chart to be inadmissible where it was not authenticated).

The chart is also vague, which presents a distinct hurdle for admissibility. See Simpson v. Bredesen, No. 10-cv-02950, 2015 WL 5655999, at *5 (W.D. Tenn. Sept. 24, 2015) ("[U]nder Rule 403, 'evidence which is vague and speculative' is inadmissible.") (quoting United States v. Maestas, 554 F.2d 834, 836 n.2 (8th Cir. 1977)); In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig., 499 F. Supp. 3d 505, 516 (S.D. Ohio 2020) (finding the contents of a report to be "too vague to constitute probative evidence"). What was intended by the term "tendered" is not explained or established by affidavit or other testimony. It might mean what amount was offered; it could also mean what was offered and paid. Without knowing the meaning of the nomenclature, there is no admissible statement of what was actually paid. And it is only payment of an improper fee that could be the subject of damages. An improper fee that was ignored

6

and/or waived could not have caused damage. Plaintiffs do not even provide any number for their damages, indicating only that the total amount is less than the total $86,000 they owe the City and more than the $1,257.31 in administrative fees that Defendants have already waived.

This is not to say that Plaintiffs are not entitled to some form of monetary relief in tandem with injunctive and declaratory relief. Their complaint does ask the Court to order Defendants to "[r]eimburse plaintiffs for amounts they have paid, in inspection fees and warrant fees . . . ." Compl. at 29. This is language that invokes restitution. The Supreme Court has stated that requests for monetary relief may be equitable where (i) "they are restitutionary, such as in actions for disgorgement of improper profits," or (ii) where a monetary award is "incidental to or intertwined with injunctive relief." Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 570–571 (1990) (punctuation modified). The relief requested here is both.

The monetary relief Plaintiffs seek is properly viewed as equitable restitution not only because it involves a return of funds wrongfully obtained. It amounts to equitable relief because the Court must undertake what is essentially an equitable accounting. The Court will have to scrutinize a series of discrete occurrences and transactions to determine whether Plaintiffs paid, in any instance, more than they would have paid had they not demanded that the City obtain a warrant. See Digital 2000, Inc. v. Bear Commc'ns, Inc., 130 F. App'x 12, 22–23 (6th Cir. 2005) ("Michigan's courts traditionally allowed a party to pursue an equitable accounting action where he was unsure of the amounts at stake and where the accounts at issue were greatly complicated.") (punctuation modified); Kerr v. Walnut Assocs. 1, LLC, No. 16-14307, 2017 WL 3434003, at *3 n.4 (E.D. Mich. Aug. 10, 2017) ("[T]he equitable remedy of an accounting developed in courts of equity because it was evident that many cases arise in which the determination of what is justly due to plaintiff necessarily involves long and difficult inquiries—for instance, it may be necessary

7

to review a series of transactions extending over many years. For such an investigation[,] a jury is clearly incompetent.") (punctuation modified).

It is similar to an equitable accounting for another reason: "The equitable remedy of an accounting . . . [seeks] disgorgement of ill-gotten profits." SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., 580 U.S. 328, 341 (2017). A court engages in equitable accounting when it attempts to ensure a wrongdoer does not profit from his wrongdoing, while also making sure that wrongdoer does not "pay[] more than a fair compensation to the person wronged." Liu v. Secs. & Exchange Comm'n, 591 US. 71, 80–81 (1936) (punctuation modified). This principle has been "a mainstay of equity courts." Id. at 80. Plaintiffs here request that the Court order reimbursement of all money Defendants received through the alleged wrongdoing—Defendants' assessment of unconstitutional fees.

Even if the relief were otherwise deemed "legal" rather than "equitable," the reimbursement Plaintiffs seek sounds in equity because it is incidental to Plaintiffs' request for injunctive relief. See Transmatic, Inc. v. Gulton Indus., Inc., 835 F. Supp. 1026, 1032 (E.D. Mich. 1993) (finding relief sought to be equitable where the damages requested were incidental to a plaintiff's request for "an injunction, something that is clearly an equitable remedy"); see also FTC v. EMA Nationwide, Inc., No. 1:12-cv-2394, 2013 WL 3153771, at *3 (N.D. Ohio June 19, 2013) (finding "the refund of monies paid" to be an equitable remedy because the refund request was "incidental to or intertwined with injunctive relief").

The equitable relief to which Plaintiffs may be entitled can be summarized as follows: To the extent that Plaintiffs paid fees for an inspection that exceeded the amount they would have been charged had they not made a demand that the City obtain a warrant, they are entitled to the return of that excess. It makes no difference whether the fees charged and paid were denominated

8

as "lock-out" fees or "reinspection" fees or "administrative" fees. The only equitable approach is for Defendants to return any excess fees because they may not retain funds that they improperly demanded, no matter what nomenclature Defendants utilized.

Although Defendants suggest that the Court previously voiced concern in its prior summary judgment ruling only about the charging of "administrative fees," see, e.g., Reply at 2, that is not the case. The Court's prior summary judgment ruling on liability contains no language that limits the fees at issue in connection with the unconstitutional conditions claim to "administrative fees." See 1/19/24 Op. & Order at 9–11. In fact, the Opinion and Order cites LaPorte's deposition testimony as acknowledging that a tenant or property owner's refusal of entry without a search warrant would result in both administrative warrant charges and lock out charges. 1/19/24 Op. & Order at 10–11. In any case, the summary judgment ruling did not purport to catalogue all improperly demanded fees. It was sufficient to point to the existence of some fees that were improperly demanded.

Because a consensual resolution of the issue would be preferable, the parties must meet and confer promptly to attempt to resolve the issue of equitable restitution. If the issue is not fully resolved, the Court will conduct a bench trial on July 10, 2024 at 8:30 a.m. to determine what amount, if any, is owed. No later than July 1, 2024, the parties must file a joint statement identifying the following:

- The date and location of each inspection for which Plaintiffs seek the reimbursement of excess fees;

- The total amount of fees charged for any such inspection, the dates they were charged and paid, how such fees were denominated by Defendants, and what Plaintiffs claim is the amount they would have been charged had they not demanded that a warrant be obtained;

- Defendants' position as to whether and why it contests any of Plaintiffs' contentions;

9

- The identity of every witness who will testify for Plaintiffs and Defendants regarding any contested contention and the specific facts (not general categories) to which they will testify; and

- All exhibits that will be offered to support or refute any such contention.

### III. CONCLUSION

For the reasons explained above, the Court (i) awards Plaintiffs summary judgment in part on their unconstitutional conditions claim; (ii) grants in part Defendants' motion for summary judgment regarding damages (Dkt. 85); and (iii) directs further proceedings as outlined above.

SO ORDERED.

Dated: June 27, 2024  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge